IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JENNIFER HOFFMAN, BRIAN BRANSON, and STEPHANIE BRANSON, on behalf of themselves and all others similarly situated | ) ) ) | Case No. CV-07-502-S-EJL |
| | ) | **REPORT AND** |
| Plaintiffs, | ) | **RECOMMENDATION** |
| | ) | |
| v. | ) | Re: Docket No. 8 |
| | ) | |
| SECURITAS SECURITY SERVICES USA, INC., a Delaware Corporation, | ) ) | **ORDER** |
| | ) | Re: Docket No. 14 |
| Defendant. | ) | |
| _____ | ) | |

Currently pending before the Court are: (1) Plaintiffs' Motion for Conditional

Certification and to Approve Notice (Docket No. 8) and (2) Defendant's Motion to Strike

Portions of Declarations of Brian Branson and Jennifer Hoffman (Docket No. 14).  Having

carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the

Court enters the following Report and Recommendation:

## I.  INTRODUCTION

Defendant Securitas Security Services USA, Inc. ("Defendant" or "Securitas") provides

security services to a broad spectrum of private and public sector clients throughout Idaho.  *See*

Def.'s Opp. to Mot. for Cond. Cert., p. 2 (Docket No. 12).  Plaintiffs assert that Defendant's

security staff (loosely defined in Plaintiffs' Complaint as "Security Guards, Lead Guards, or Site

Supervisors") was subjected to a common *de facto* policy of encouraging off-the-clock work in

**REPORT AND RECOMMENDATION AND ORDER - 1**

violation of the Federal Labor Standards Act (the "FLSA").  *See* Pls.' Compl. ¶¶ 5-14 at pp. 2-4 (Docket No. 1).  Specifically, Plaintiffs, purportedly on behalf of themselves and a class of others similarly situated, allege that Defendant violated the FLSA by failing to compensate Plaintiffs for all of their hours worked, including overtime hours.  *See id.* at ¶¶ 13 & 14.

In addition to denying these allegations, Defendant argues that Plaintiffs have failed to meet their burden of showing that this action should be conditionally certified.  *See generally* Def.'s Opp. to Mot. for Cond. Cert. (Docket No. 12).  Moreover, in an attempt to buttress its argument against conditional certification, Defendant seeks to strike portions of two declarations offered in support of Plaintiffs' conditional certification efforts.  *See generally* Mot. to Strike (Docket No. 14).

## II.  BACKGROUND

There are currently three named Plaintiffs and an "additional witness/plaintiff."  *See* Pls.' Mem. in Supp. of Mot. for Cond. Cert., p. 2 (Docket No. 8, Att. 2).  According to Plaintiffs, each of these individuals worked for Defendant on an hourly basis, in several job classifications, and at different locations throughout Idaho.  *See* Pls.' Compl. at ¶¶ 2, 5, & 6 (Docket No. 1).  It is alleged that, at each location where Plaintiffs performed services, they were required to attend pre-shift "passdowns" without being compensated for their time.  *See id.* at ¶¶ 7 & 8.[1]  Plaintiffs claim they were instructed either to "clock in after or clock out before performing the passdown" or "to edit their timecards to remove that time."  *See id.* at ¶ 10.  As a consequence, Plaintiffs

---

[1]  A "passdown," according to Plaintiffs, is/was "a conversation with the guard being relieved as to events that had occurred on the shift, special instructions or incidents that had or could occur, and any special instructions for the day."  *See* Pls.' Compl. at ¶ 8 (Docket No. 1).  Plaintiffs claim to have spent from ten to thirty minutes each day (depending on job description) engaged in passdown discussions.  *See id.*

**REPORT AND RECOMMENDATION AND ORDER - 2**

assert that the time spent in passdown discussions was usually not paid at the normal or overtime hourly rates. *See id.* Plaintiffs similarly claim that time spent in staff meetings was "often not paid for by [Defendant]" such that Plaintiffs "were paid for less than the actual amount of time spent in the meetings." *See id.* at ¶ 11.

Plaintiffs allege that Defendant's policy of requiring its employees to attend pre-shift briefings and/or staff meetings without being compensated for their time was in effect at various locations throughout Idaho.[2] *See* Jennifer Hoffman Decl. at ¶ 1 (Docket No. 8, Att. 3); Brian Branson Decl. at ¶ 1(Docket No. 8, Att. 4); Stephanie Branson Decl. at ¶ 1 (Docket No. 8, Att. 4); David Huitt, Jr. Decl. at ¶ 1 (Docket No. 8, Att. 5). The facilities where the policy occurred included a hospital (Mercy Medical Center North); private businesses and buildings (Shop Ko Distribution Center, T-Mobile Call Center, Albertsons Corporate Office, Hewlett-Packard Campus, Marriot Inn, Direct TV, Wells Fargo Call Center, Boise Outlet Mall); and at least one government building (Ada County Courthouse). *See id.*

Despite correctly recording the actual number of hours worked in any given week, Plaintiffs claim they were instructed by Defendant only to write down the time their shifts were scheduled to start and end, regardless of whether they arrived early or stayed late in order to perform a passdown. *See* Jennifer Hoffman Decl. at ¶ 9 (Docket No. 8, Att. 3); Brian Branson Decl. at ¶ 5 (Docket No. 8, Att. 4); Stephanie Branson Decl. at ¶ 5 (Docket No. 8, Att. 4); David

---

[2] Although Plaintiffs' briefing lends the impression that Defendant systematically refused to account for its employees' accrued overtime hours *throughout* Idaho, the declarations offered in support of their attempt at conditional certification paint a decidedly more local picture, i.e., the Treasure Valley area in Southwest Idaho. *See* Jennifer Hoffman Decl. at ¶ 1 (Docket No. 8, Att. 3); Brian Branson Decl. at ¶ 1(Docket No. 8, Att. 4); Stephanie Branson Decl. at ¶ 1 (Docket No. 8, Att. 4); David Huitt, Jr. Decl. at ¶ 1 (Docket No. 8, Att. 5).

**REPORT AND RECOMMENDATION AND ORDER - 3**

Huitt, Jr. Decl. at ¶¶  4 & 9 (Docket No. 8, Att. 5).  Alternatively, according to Plaintiffs, hours

recorded in excess of the typical 40-hour work week were routinely altered to reflect only a

"normal" 8-hour work day shift.  *See* Hoffman Decl. at ¶ 4 (Docket No. 8, Att. 3); Brian Branson

Decl. at ¶¶ 8 & 10; David Huitt, Jr. Decl. at ¶¶ 3 & 8 (Docket No. 8, Att. 5).

Plaintiffs therefore request certification of a collective action for all persons who

are/were employed by Defendant as hourly workers in Idaho within the past three years.  *See*

Not. of Collective Action [Proposed], attached as Ex. 1 to Pls.' Mem. in Supp. of Mot. for Cond.

Cert., p. 19 (Docket No. 8, Att. 2).  Plaintiffs contend that the members of this class are similarly

situated to those persons already participating in and/or who already opted into this action.

### III.  ANALYSIS

### A.      Conditional Certification:  The Standard

Section 16(b) of the FLSA provides that an action may be maintained "by any . . .

employee[ ] for and on behalf of himself . . . and other employees similarly situated" for

damages from an employer who has failed to pay overtime as required under the Act.  29 U.S.C.

§ 216(b).  Such an action is known as a collective action, allowing potential class members who

are similarly situated to the named plaintiffs to file a written consent with the court to "opt-in" to

the case.  *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004).[3]  A collective

action serves the ends of avoiding a multiplicity of duplicate actions and promoting the FLSA's

broad remedial goals.  *See generally Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 172-74

---

[3]  A collective action differs from a FRCP 23 class action in that potential plaintiffs in a
collective action must join the action by "opting in," whereas, a class action includes any
potential plaintiff who does not "opt out."  *See* 29 U.S.C. § 216(b) ("No employee shall be a
party plaintiff to any such action unless he gives his consent in writing to become such a party
and such consent is filed in the court in which such action is brought."); Fed. R. Civ. P. 23(a).

**REPORT AND RECOMMENDATION AND ORDER - 4**

(1989).  To implement the opt-in provision, a district court may authorize the named plaintiffs in a FLSA collective action to send notice to all potential plaintiffs, and may set a deadline for these plaintiffs to join the suit by filing consents to sue.  *Id*. at 169, 172.

A court's determination of whether a collective action is appropriate is discretionary. *Adams v. Inter-Con Sec. Sys. Inc.*, 242 F.R.D. 530, 535 (N.D. Cal. 2007) (citing *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004)).  Plaintiffs bear the burden of showing that they and the proposed class are similarly situated for the purpose of proceeding as a collective action.  *Adams*, 242 F.R.D. at 535-36 (citing U.S.C. § 216(b)).  However, the term "similarly situated" is not defined under the FLSA and, to date, the Ninth Circuit has not addressed the issue.

Federal courts have adopted or discussed at least three approaches to determining whether plaintiffs are "similarly situated" for purposes of section 216(b): "'(1) a two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre-1966 version of Rule 23 for 'spurious' class actions.'" *Adams*, 242 F.R.D. at 536 (quoting *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 481 (E.D. Cal. 2006)).  Most courts considering this discrete issue apply the two-tiered approach and, therefore, that approach will be applied here.

The first step under the two-tiered approach considers whether the proposed class should be given notice of the action.  *Adams*, 242 F.R.D. at 536 (citing *Leuthold*, 224 F.R.D. at 467). Examining the pleadings and affidavits/declarations submitted by the parties, the court makes this determination "under a fairly lenient standard" given the limited amount of evidence available for the court's consideration.  *Id*.  In doing so, a court "require[s] nothing more than

**REPORT AND RECOMMENDATION AND ORDER - 5**

substantial allegations that the putative class members were together the victims of a single

decision, policy, or plan." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 n. 8 (5th Cir.

1995); *see also Adams*, 242 F.R.D. at 536 (citing *Leuthold*, 224 F.R.D. at 468). In short, "the

plaintiffs must show that there is some factual basis beyond mere averments in their complaint

for the class allegations." *Adams*, 242 F.R.D. at 536 (quoting *West v. Border Foods, Inc.*, 2006

WL 1892527, at *2 (D. Minn. July 10, 2006)); *see also Holbrook v. Smith & Hawken, Ltd.*, 246

F.R.D. 103, 105 (D. Conn. 2007) ("In order for a plaintiff to meet this modest, preliminary

burden, the district court need only be satisfied that there is a basis to conclude that questions

common to a potential group of plaintiffs would predominate a determination of the merits in

this case.") (internal quotes and citation omitted); *Morton v. Valley Farm Transp., Inc.*, 2007 WL

1113999, at *2 (N.D. Cal. April 13, 2007) (describing burden as "not heavy" and requiring

plaintiffs to merely show "reasonable basis for their claim of class-wide" conduct) (internal

quotes and citation omitted); *Stanfield v. First NLC Fin. Serv., LLC*, 2006 WL 3190527, at *2

(N.D. Cal. Nov. 1, 2006) (holding that plaintiffs "must be generally comparable to those they

seek to represent."). The result is usually conditional class certification. *Adams*, 242 F.R.D. at

536 (citing *Leuthold*, 224 F.R.D. at 467).

        The second step under the two-tiered approach comes after notice and discovery (usually

prompted by a motion to decertify), with the court making a second determination, utilizing a

stricter standard of "similarly situated," to determine if certification remains appropriate. *See*

*Vaszlavik v. Storage-Technology Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997). If the court finds

that the claimants are not actually similarly situated during this later, second step, "the court may

decertify the class and dismiss the opt-in plaintiffs without prejudice." *Adams*, 242 F.R.D. at

536 (quoting *Leuthold*, 224 F.R.D. at 467).

**REPORT AND RECOMMENDATION AND ORDER - 6**

At this stage of the litigation, this Court need only consider the first step of the two-tiered conditional certification analysis; namely, whether it is sufficiently alleged that the proposed class is similarly situated to the named Plaintiffs here.  Defendant claims that Plaintiffs cannot satisfy their initial burden, however small.  First, Defendant argues that Plaintiffs fail to show that other people desire to opt-in to the class.  *See* Def.'s Opp. to Mot. for Cond. Cert., pp. 6-10 (Docket No. 12).  Second, Defendant argues that Plaintiffs fail to show that they and any putative class members are similarly situated as is required before certifying this collective action.  *Id*. at pp. 10-15.  Finally, Defendant argues that, regardless of Plaintiffs' evidentiary shortcomings, off-the-clock claims are inappropriate for collective actions.  *Id.* at pp. 15-18. Each argument is addressed below.

**B.      Do Other Potential Class Members Want to Opt-In?**

As previously discussed, 29 U.S.C. § 216(b) contemplates a collective action among those employees considered "similarly situated."  *See supra* at pp. 4-6.  However, Defendants maintain that Plaintiffs must go beyond a mere showing that the members of the proposed class are similarly situated.  Relying on case law largely from the Eleventh Circuit, Defendant argues that this is not an appropriate case for conditional certification because Plaintiffs have not proffered any alternate evidence that other individuals desire to opt-in.  *See* Def.'s Opp. to Mot. for Cond. Cert., pp. 7-10 (Docket No. 12) (citing *Davis v. Charoen Pokphand (USA), Inc.*, 303 F. Supp. 2d 1272 (M.D. Ala. 2004); *Dybach v. State of Florida Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991); *Horne v. United Servs. Auto. Assoc.*, 279 F. Supp. 2d 1231 (M.D. Ala.

**REPORT AND RECOMMENDATION AND ORDER - 7**

2003); *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159 (D. Minn. 2007);[4] *Barten v. KTK & Assoc. Inc.*, 2007 WL 2176203 (M.D. Fla. July 26, 2007)).

However, this additional requirement at the preliminary notice stage is not universally applied beyond the Eleventh Circuit, and has never been applied in the Ninth Circuit. *See, e.g.*, *Mowdy v. Beneto Bulk Transp.*, 2008 WL 901546, at *7 (N.D. Cal. March 31, 2008) (dismissing idea that plaintiffs must demonstrate opt-in interest prior to conditional certification, finding: "As a practical matter it would make little sense to require plaintiffs to have the knowledge they attempt to obtain by gaining approval of notice from the court."); *Adams*, 242 F.R.D. at 535-36 (discussing only similarly situated requirement); *Leuthold*, 224 F.R.D. at 468 (same); *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006) (same).  Independent of this apparent reality, such a threshold requirement strikes this Court as contradictory to the very notion of providing *notice* to potential plaintiffs of the opportunity to become part of a collective action - what the FLSA expressly provides.  Such a perspective is not unique; indeed, in characterizing as dicta *Dybach's* requirement that other employees definitively desire to opt-in to the action, the district court in *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623 (D. Colo. 2002) reasoned:

> The cited language in *Dybach* is *dicta*.  Research fails to reveal any court that has applied this requirement.  Moreover, the instruction appears to conflict with United States Supreme Court's position that the [FLSA] should be liberally "applied to the furthest reaches consistent with congressional direction."

*Reab*, 214 F.R.D. at 629 (quoting *Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 302

---

[4]  While *Parker* is not a product of the Eleventh Circuit, its rationale is culled directly from Eleventh Circuit authority - *Dybach v. State of Florida Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991).  *See Parker*, 492 F. Supp. 2d at 1164-65.

**REPORT AND RECOMMENDATION AND ORDER - 8**

(1985)).  *Reab* persuasively goes on to discuss the consequence of mandating what amounts to a

guarantee that potential plaintiffs would actually seek to join the lawsuit, stating:

> [R]equiring plaintiffs in § 216(b) actions to have some unknown
> number of persons decide whether to opt in places plaintiffs in the
> position of communicating with potential litigants without court
> supervision or guidance, leaving plaintiffs subject to allegations of
> improper solicitation and "tainting" of the putative class.  At this
> stage of the proceedings, the number of persons who wish to join the
> action is not a factor I consider in determining whether to grant
> Plaintiffs' motion to certify.

*Id.*; *see also Heckler v. DK Funding*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007) (producing

evidence of other opt-in plaintiffs "would essentially force plaintiffs or their attorneys to issue

their own form of informal notice or to otherwise go out and solicit other plaintiffs.  This would

undermine a court's ability to provide potential plaintiffs with a fair and accurate notice and

would leave significant opportunity for misleading potential plaintiffs.").  Still, notwithstanding

the authority critical of Defendant's proposed requirement that Plaintiffs provide evidence of

others who desire to opt-in (and no Ninth Circuit authority on this point), Defendant's own case

law appears distinguishable from the instant action.

     In *Davis*, for example, the district court applied a more "searching standard" at the notice

stage because the parties had already conducted discovery:

> The rationale for the "fairly lenient standard" is that at the early
> stages of litigation, plaintiffs have not had time to conduct discovery
> and marshal their best evidence.  This rationale disappears, however,
> once plaintiffs have had an opportunity to conduct discovery with
> respect to defendant's policies and procedures.

*Davis*, 303 F. Supp. 2d at 1276 (internal citations omitted).  Because plaintiffs already had time

to conduct discovery, the district court found it appropriate to apply a more "rigorous standard,"

requiring plaintiffs to establish that other employees want to opt-in to the action before granting

**REPORT AND RECOMMENDATION AND ORDER - 9**

conditional certification.  *Id*.  Given the state of discovery present here, the logic offered in *Davis* does not apply.

In *Dybach*, the Eleventh Circuit remanded the action to the district court as to the potential FLSA claim "because it would appear that there is considerable probability that [plaintiff] will be able to proffer evidence to the district court on remand of this case showing that there are a number of employees of the department-employer who are 'similarly situated' and who may desire to 'opt-in.'"  *Dybach*, 942 F.2d at 1567.  In addition to being considered *dicta* by at least one other court (*see supra* at p. 8), *Dybach* was not armed with four declarations from four different people discussing a defendant's alleged policy of denying overtime wages as is the situation here (saying nothing of the additional individuals referenced within these declarations who were allegedly aware of this violative conduct and may have likewise suffered).  Moreover, in *Dybach*, the standard proposed is not evidence that others *will* opt-in to the action, but, instead, that others "*may* desire to opt-in."  *Dybach*, 942 F.2d at 1567.  Therefore, even if the at-issue requirement at the notice stage applied, this Court is satisfied, based upon the four declarations themselves, that there are other employees who at least *may* desire to opt-in. *See id.* (acknowledging lower court's discretion to determine whether such employees exist).

In *Horne*, the district court considered only the individual plaintiff's two sworn statements and documentary evidence in determining the existence, if any, of others desiring to opt-in to a collective action.  *Horne*, 279 F. Supp. 2d at 1234.  According to the district court, this was not enough to "demonstrate that employees outside of the work location for which the plaintiff has provided evidence were similarly affected . . . ."  *Id*. at 1235 (citing *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358 (M.D. Ala. 1999).  The district court stated simply:  "[The

**REPORT AND RECOMMENDATION AND ORDER - 10**

plaintiff's] alleged failure to receive overtime could merely be an occurrence unique to [the plaintiff]."  *Id*.  Again, even if such a requirement applied here, as with *Dybach*, the four declarations accompanying Plaintiffs' conditional certification attempt suggest that a desire to be part of a collective action is not unique.

In *Parker*, the district court was concerned that conditional class certification would be rendered automatic by a complaint that simply references "other employees similarly situated." *Parker*, 492 F. Supp. 2d at 1165.  Here, Plaintiffs go beyond using such "magic words," as the district court cautioned against, supplying the Court with four declarations indicating the independent desire of four individuals to participate in the collective action.  These four declarations likely would have supplied a predicament to the district court in *Parker* given its foresight in rhetorically questioning the number of declarants needed to satisfy the requirement to show that others seek to opt-in.  *See id*. at n. 4 ("It goes without saying that this analysis applies only when there are one or two named plaintiffs. . . . .  Of course, this raises a difficult question: how many plaintiffs is enough to render conditional certification proper without evidence of additional opt-ins?"); *compare Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2008 WL 792828, at *5 (N.D. Cal. March 24, 2008) (criticizing number of declarations as basis for satisfying notice stage of conditional certification, commenting: "The next in Defendants' litany of unpersuasive arguments is, or appears to be, that Plaintiffs have not offered enough declarations to support conditional certification.  Defendants do not offer any suggestion about what number of declarations would be sufficient, assuming such an arbitrary cutoff exists.").  Because the circumstances in this case are distinct from those in *Parker*, the latter's reasoning cannot apply to reject outright Plaintiff's motion for conditional certification.

**REPORT AND RECOMMENDATION AND ORDER - 11**

Finally, in *Barten*, similar to *Davis* (*see supra* at pp. 9-10), the district court was critical of the plaintiffs' inability to identify more than one viable opt-in plaintiff "in the eleven months since this lawsuit was filed . . . ."  *See Barten* 2007 WL 2176203, at *3.  Here, Plaintiffs filed their action in late November 2007, moving for conditional certification nearly three months later.  Not only has discovery not taken place here, but it remains the subject of a pending motion for protective order (Docket No. 27), awaiting the resolution of this motion for conditional certification.[5]  Where the time for Plaintiff to secure opt-in plaintiffs is significantly reduced, coupled with the fact that the parties have not engaged in any discovery to date, *Barten* should not be considered altogether persuasive toward concluding that Plaintiffs failed to show that other employees want to join in this action.  For this primary reason, *Barten* is inapplicable.

The above-referenced reasons combine to support this Court's recommendation that either (1) Plaintiffs not be required to demonstrate at this stage that other Securitas employees actively seek to participate in this action, or (2) if so required, Plaintiffs have satisfied such a threshold burden at this preliminary stage.  In making this recommendation, this Court is in no way indicating that conditional certification is a certainty, granted automatically as a matter of course and convenience.  Its recommendation in this respect was not arrived upon without significant consideration.  To be sure, the number of declarants, the familial relation among those declarants, the relatively ambiguous reference to other employees who were aware of

---

[5]  Although not the subject of this Report and Recommendation, Defendant's Motion for Protective Order (Docket No. 27) indicates that Plaintiffs refused to conduct pre-certification discovery in order to be able to make the argument here that, absent discovery, a more lenient standard should be applied at the notice stage.  *See* Def.'s Mem. in Supp. of Mot. for Prot. Order, p. 3 (Docket No. 27, Att. 2).  Even if so, the fact remains that no discovery has taken place and, therefore, the more lenient conditional certification inquiry must apply when considering Plaintiffs' quest for a collective action.

**REPORT AND RECOMMENDATION AND ORDER - 12**

Defendant's alleged policy to deprive workers their overtime wages, and the potential

evidentiary shortcomings of those declarations (discussed *infra* at pp. 17-22) may not prevent

conditional certification when considering the low standard of proof required at this stage.  The

same may not be said, however, when Defendant files its anticipated motion to decertify.

**C.      Are Members of the Potential Class Similarly Situated?**

Defendant alternatively argues that Plaintiffs have not shown that they and any putative

class members are similarly situated for the purpose of certifying a collective action in this case.

*See* Def.'s Opp. to Mot. for Cond. Cert., pp. 10-11  (Docket No. 12).  In support of this

argument, Defendant points out that its corporate policy complies with the FLSA and, therefore,

any action contradicting company policy reflects an "isolated phenomenon."  *Id*. at pp. 11-12.

Defendant also argues that Plaintiffs' evidence nonetheless falls short of establishing a common

plan or practice in violation of the FLSA.  *Id*. at pp. 12-15.  Neither argument is persuasive.

1.      <u>Defendant's Compliant Company Policy Cannot, by Itself, Stop an FLSA Claim
Before it Begins</u>

This Court is in no position to question that Defendant maintains a written company-wide

policy in Idaho that complies with the FLSA in every respect.  To this end, Defendant submits

six affidavits on this point which, again, this Court cannot second-guess.  *See id.* at p. 11, n. 5.

Yet, the apparent fact that Defendant had a written policy that on its face complied with the

FLSA cannot be dispositive on the issue of conditional certification.  Otherwise, taken to its

extreme, any defendant business entity with a compliant policy could prevent a collective action

by simply pointing to the policy itself.

In *Beauperthuy*, 2008 WL 793838 (N.D. Cal. March 24, 2008), the defendant argued at

the conditional certification stage that its employee handbooks reflected the company's policy to

**REPORT AND RECOMMENDATION AND ORDER - 13**

"'record all time worked' by employees, and to pay any non-exempt employee who works

overtime the appropriate overtime pay." *Id*. at *4.  In response, the district court stated:

> An employer's responsibility under the FLSA extends beyond merely
> promulgating rules to actually enforcing them.   The [plaintiffs]
> alleged that, in practice, [the defendant] refused to pay them in full
> for all of the hours they worked.  That [the] [d]efendants published
> a handbook cannot immunize them against an FLSA action where
> there is substantial evidence that they did not follow their own
> guidelines.

*Id*. (internal citations omitted).  In other words, the policy itself is arguably immaterial at this

juncture; instead, it is the *practice* that is engaged despite the policy that must be considered

when determining whether to conditionally certify a class.

        To Defendant's credit, and unlike the defendant in *Beauperthuy*, Defendant here supplies

the court with the affidavits of a former rocky mountain area human resources manager, the

former and current branch managers for the Idaho branch office, a field service manager, and

several site supervisors, contending that employees were not permitted to alter or deviate from

corporate policy regarding payment of wages or recording hours worked.  *See* Def.'s Opp. to

Mot. for Cond. Cert., p. 11  (Docket No. 12).  Again, these allegations may very well be true,

however it is not for the Court to consider at this preliminary stage of the conditional

certification process the merits of the apparently disputed adherence to Defendant's written

corporate policy.  *See Mowdy*, 2008 WL 901546, at *6 ("[A]t this first stage of conditional

certification, it is inappropriate for the court to entertain an inquiry on the merits.  The fact that

such an inquiry will be necessary in the future does not constitute a sufficient ground to prevent

putative class members from receiving notice.").

        Certainly the court is aware that Defendant's arguments may well ultimately prevail

following more extensive discovery and further development of legal arguments.  However, at

this stage, the Court's consideration of the issue is appropriately restricted and limited.

**REPORT AND RECOMMENDATION AND ORDER - 14**

2.      Sufficient Evidence Exists of a Common Plan or Practice in Violation of the
        FLSA for the Sole Purpose of Conditional Certification

Defendant further argues that Plaintiffs' four declarations, "clustered" near the same

geographic locale, potentially inapplicable to other locations with other supervising employees

and time-keeping protocols, and representing only a small percentage of the sought-after class, is

not enough to show a common plan or practice that violates the FLSA and, in turn, warrants

conditional certification.  *See* Def.'s Opp. to Mot. for Cond. Cert., pp. 12-15 (Docket No. 12).  In

support of this proposition, Defendant cites to an unreported case from Minnesota - *West v.*

*Border Foods, Inc.*, 2006 WL 1892527 (D. Minn. July 10, 2006).

Defendant correctly relays that, in *West*, the district court found that the six plaintiff

statements, representing only 2.5 percent of the potential class, were too limited a sampling to

support "Plaintiffs' assertion of widespread violations resulting from a common policy or plan."

*See* Def.'s Opp. to Mot. for Cond. Cert., p. 14 (Docket No. 12) (citing *West*, 2006 WL 1892527,

at *6).  As a result, Defendant argues that Plaintiffs are required to provide evidence of alleged

violations at every location where a putative class member works.  *See* Def.'s Opp. to Mot. for

Cond. Cert., p. 13 (Docket No. 12) ("As it is Plaintiffs' burden to convince the Court that the

Securitas employees to whom Plaintiffs seek to provide notice are similarly situated, they must

do so for all of the different locations at which the putative class members work.")

Without question, the Court realizes that case law (reported and unreported) exists

supporting Defendant's position in this respect.  Unfortunately, however, there is no uniform

application of Defendant's proffered argument across the Circuits.  Within the Ninth Circuit, for

example, courts appear not to require such an all-encompassing showing as that suggested in

*West*.  In *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530 (N.D. Cal. 2007), the district court

**REPORT AND RECOMMENDATION AND ORDER - 15**

appeared to reject such an application. *Adams*, 242 F.R.D. at 537-38 ("[T]he named plaintiff

must demonstrate that there existed at least one similarly situated person at a facility other than

his own. . . . .   For conditional certification, plaintiffs do not need to provide evidence that every

facility relevant to the proposed class maintains an illegal policy.").   More recently, in

*Centurioni v. City and County of San Francisco*, 2008 WL 295096 (N.D. Cal. Feb. 1, 2008), the

district court adopted *Adams'* rationale in concluding:

> The [defendant] contends that the certification should be limited to
> officers in those specific ranks and departments from which
> Plaintiffs' submitted affidavits in support of their allegations . . . .
> However, for conditional certification, Plaintiffs are not required to
> provide evidence of the alleged violations for every particular rank
> and department.   The court in *Adams* held that the plaintiffs did not
> need to demonstrate the existence of similarly situated persons at
> every location in the proposed class, but rather, "the named plaintiff
> must demonstrate that there existed at least one similarly situated
> person at a facility other than his own."

*Centurioni*, 2008 WL 295096, at *3 (internal citations omitted).

        While this Court cannot agree at this time with Plaintiffs' assertion that they "have shown

that, in fact, violations result from corporate-level decisions that are uniformly applied to *all*

locations in Idaho" (*see* Pls.' Reply Brief on Mot. to Approve Notice, p. 6 (Docket No. 21)

(emphasis added)), there is evidence, consistent with *Adams* and *Centurioni*, that the declarations

from the three original Plaintiffs, alongside another's Consent to Join and separate declaration,

indicate that various locations allegedly suffered from the same common plan or practice to deny

overtime compensation as claimed by Plaintiffs.   While potentially at odds with case law offered

by Defendants, this appears to be enough according to case law elsewhere, including case law

within this Circuit.   Therefore, sufficient allegations exist, suggesting that members of the

potential class are similarly situated for the purpose of conditional certification.

**REPORT AND RECOMMENDATION AND ORDER - 16**

**D.**     **Are Off-The-Clock Actions Appropriate for Collective Action?**

Defendant lastly argues that Plaintiffs' off-the-clock claims are not appropriate for a collective action.  *See* Def.'s Opp. to Mot. for Cond. Cert., p. 15  (Docket No. 12).  While originally attacking Plaintiffs' specific off-the clock claims, Defendant's argument later morphs into a broader admonition against conditionally certifying off-the-clock-type claims.  *Id*. at p. 17-18 ("In other words, these simply are not 'appropriate cases' for collective litigation.") (citing *Hoffman-La Roche*, 493 U.S. at 169)).

To the extent Defendant's initial critique goes to the individualized nature of Plaintiffs' claims, the Court considers these to be recycled versions of Defendant's previous arguments as to whether Plaintiffs and putative class members are similar situated.  *See supra* at pp. 13-16. However, to the extent Defendant is suggesting an across-the-board denial of conditional certifications as to off-the-clock actions, the Court cannot agree.  *See generally Adams*, 242 F.R.D. at 536-37 (disagreeing with proffered argument that off-the-clock pay violations are not generally suitable for collective action certification); *Mowdy*, 2008 WL 901546 (allowing conditional certification in off-the-clock action); *Beauperthuy*, 2008 WL 793838 (same); *Godfrey v. Chelan County PUD*, 2007 WL 2327582 (E.D. Wash. Aug. 10, 2007) (same); *but see Castle v. Wells Fargo Fin., Inc.*, 2008 WL 495705 (N.D. Cal. 2008) (finding individual issues often predominate in off-the-clock actions such that employees are not similarly situated).

**E.**     **Motion to Strike**

Through its Motion to Strike Portions of Declarations of Brian Branson and Jennifer Hoffman ("Motion to Strike") (Docket No. 14), Defendant claims that portions of Mr. Branson's and Ms. Hoffman's declarations contain statements that are not based on personal knowledge, contain inadmissible hearsay, lack foundation, and are conclusory.  *See* Mem. in Supp. of Mot. to

**REPORT AND RECOMMENDATION AND ORDER - 17**

Strike, p. 2 (Docket No. 14, Att. 2).  According to Defendant, only *admissible* evidence may be considered for the purpose of conditionally certifying a class.  *See id.* at p. 3, citing *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865-866 (S.D. Ohio, 2005); *Richards v. Computer Sciences Corp.*, 2004 WL 2211691, at *1 (D. Conn. Sept. 28, 2004); *McElmurry v. U.S. Bank Nat'l Ass'n*, 2004 WL 1675925, at *10 (D. Or. July 27, 2004); *Clark v. Dollar Gen. Corp.*, 2001 WL 878887, at *2 (M.D. Tenn. May 23, 2001); *see also Sjoblom v. Charter Commc'ns, LLC*, 2007 WL 4560541, at *10 (W.D. Wis. Dec. 19, 2007); *Threatt v. Residential CRF, Inc.*, 2005 WL 4631399, at *5 (N.D. Ind. Aug. 31, 2005).  Plaintiffs disagree.  *See* Opp. to Mot. to Strike, pp. 2-5 (Docket No. 19); *see also Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322-23 (S.D.N.Y. 2007) ("[T]he initial class certification determination must be made on preliminary documents such as pleadings and affidavits, which necessarily contain unproven allegations.  Further, the Court is not being asked for a determination on the merits and the Defendant will have another opportunity to object to class certification after discovery."); *Crawford v. Lexington-Fayette Urban County Government*, 2007 WL 293865, at *3 (E.D. Ky. Jan. 26, 2007); *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363 at 368 (E.D. Tenn. 2006); *Aguayo v. Oldenkamp Trucking*, 2005 WL 2436477 (E.D. Cal. Oct. 3, 2005) (disregarding hearsay and foundational challenges to declarations submitted in support of motion for conditional certification) (unpublished).  The point here is that, as with nearly every other issue presented in the parties' briefing, case law exists to support both positions.

Recognizing that some courts will conditionally certify collective actions under the FLSA based solely on the allegations in the complaint (*see, e.g., Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996)), this Court recommends a somewhat more relaxed approach when considering evidentiary objections during the preliminary conditional

**REPORT AND RECOMMENDATION AND ORDER - 18**

certification stage as opposed to those same objections at, for example, the summary judgment

stage.  With this perspective in mind, the Court addresses Defendant's objections

> 1.     Paragraph 8 of Brian Branson's Declaration

Paragraph 8 of Mr. Branson's Declaration reads:

> As a Shift Lead, it was my duty to approve the timecards of the
> Security Officers.  I approved the timecards as submitted.  I did not
> change them.  I later learned that the timecards were changed if any
> overtime was included.  Jennifer Hoffman told me this.

*See* Branson Decl., at ¶ 8 (Docket No. 8, Att. 4).  Defendant argues that, because Mr. Branson

only worked at one Securitas site, his statement that "timecards were changed if any overtime

was included" is without foundation.  *See* Def's. Memo. in Supp. of Mot. to Strike, p. 4 (Docket

No. 14, Att. 2).  Defendant further asserts that Mr. Branson's attribution of such a practice to Ms.

Hoffman represents inadmissible hearsay.  *Id.*  The Court agrees with Defendant's objection.

Apparently, so does Plaintiffs' counsel.  During the hearing, Plaintiffs' counsel conceded that

these portions of Mr. Branson's Declaration "should be stricken" and "serve[ ] no purpose."

Therefore, Defendant's Motion to Strike (Docket No. 14) is granted in this respect.

> 2.     Paragraph 9 of Brian Branson's Declaration

Paragraph 9 of Mr. Branson's Declaration reads:

> In my experience, the timecards at Securitas were a sham.  They did
> not accurately reflect the time people actually worked.  If you arrived
> early or stayed late, the timecards just showed an 8 hour shift.
> Overtime was regularly worked, but rarely paid.

*See* Branson Decl. at ¶ 9 (Docket No. 8, Att. 4).  Defendant argues that all of Paragraph 9 should

be stricken as conclusory and lacking foundation.  *See* Def.'s Memo. in Supp. of Mot. to Strike,

p. 4 (Docket No. 14, Att. 2).  While Defendant presents a compelling argument on its face, Mr.

Branson's preceding paragraph (the portions not objected to) establish that he (1) was a Shift

**REPORT AND RECOMMENDATION AND ORDER - 19**

Lead, (2) was tasked with approving time cards, and (3) did approve time cards.  *See id.* at ¶ 8.

Foundation exists for the purpose of Mr. Branson's allegations within Paragraph 9, but only to

the extent those allegations apply to him.  However, the Court agrees with Defendant that there

is no foundation to apply Mr. Branson's personal observations and opinions to others.  Instead,

he may relate his experience with and his accompanying perception of time card protocol for the

purpose of Plaintiff's attempt at conditional certification.  Therefore, Defendant's Motion to

Strike (Docket No. 14) is granted in this limited respect.

       3.      <u>Paragraph 10 of Brian Branson's Declaration</u>

      Paragraph 10 of Mr. Branson's Declaration reads:

> The practice of altering time cards was well known among
> employees.  I estimate that I spoke to about 6 employees about the
> time card irregularities.  I don't recall their names.  The topic was
> discussed, but no one ever did anything about it.

*See* Branson Decl. at ¶ 10 (Docket No. 8, Att. 4).  Defendant argues that Paragraph 10 should

likewise be stricken for lack of foundation, as well as hearsay.  *See* Def.'s Memo in Supp. of

Mot. to Strike, p. 5 (Docket No. 14, Att.2).  The fact that Mr. Branson spoke with six employees

about alleged time card irregularities is not hearsay.  Mr. Branson's attempt to establish that such

irregularities were well-known among employees through these same conversations, however, is

less clear.  Certainly, absent reference to these six conversations, Mr. Branson does not provide

adequate foundation for attributing his observation (the alleged practice of altering time cards) to

the other employees referred to in Paragraph 10's first sentence.  If the topic was indeed

discussed (as implied by Paragraph 10's last sentence), Mr. Branson is attempting to convey that

these six employees agreed that Defendant altered time cards in order to suggest that the practice

was well-known.  This presents a legitimate hearsay quandary - one this Court chooses to avoid

in favor of a more lenient evidentiary standard given the early state of the proceedings and, even

**REPORT AND RECOMMENDATION AND ORDER - 20**

more importantly, the state of discovery (*see supra* at pp. 17-18).  Therefore, Defendant's

Motion to Strike (Docket No. 14) is denied in this respect.

       4.    <u>Paragraph 9 of Jennifer Hoffman's Declaration</u>

       Paragraph 9 of Ms. Hoffman's Declaration reads in part:

> Eventually, I did not report my time accurately and did not write down the time I spent doing passdowns or attending site and staff meetings.  I was told not to by my supervisors Dean Tubbs, Dave Gamboni, and Bennett McKutcheon.  I under reported my time and altered the time cards of Security Officers because that's what Vicky (last name unknown) the Scheduler told me to do.  According to Vicky, those were the orders of Branch Manager Steve Wilkinson.

*See* Hoffman Decl. at ¶ 9 (Docket No. 8, Att. 3).  Defendant does not make a hearsay objection

as to the alleged statements from Dean Tubbs, Dave Gamboni, and Bennett McKutcheon to Ms.

Hoffman.  Instead, Defendant argues that any statements from Steve Wilkinson to "Vicki" are

not only false, but hearsay, along with any statements from "Vicky" to Ms. Hoffman.  *See* Def.'s

Memo. in Supp. of Mot. to Strike, p. 5 (Docket No. 14, Att. 2).  These alleged statements may

very well constitute an admission of a party opponent under FRE 801(d)(2) and, as a result, not

qualify as hearsay.  While Defendant appropriately points out Plaintiff's burden for proving the

applicability of FRE 801(d)(2)(D) in the typical context (*see* Def.'s Reply in Supp. of Mot. to

Strike, p. 5 (Docket No. 24)), it noticeably does not argue that the at-issue statements are beyond

the scope of either Mr. Wilkinson's or "Vicky's" employment.  Regardless, for the purpose of

granting conditional certification only, these statements are to be considered admissions of a

party opponent and not hearsay.  Therefore, Defendant's Motion to Strike (Docket No. 14) is

denied in this respect.

       5.    <u>Paragraph 11 of Jennifer Hoffman's Declaration</u>

       Paragraph 11 of Ms. Hoffman's Declaration reads:

**REPORT AND RECOMMENDATION AND ORDER - 21**

> The practice of altering time cards was well known among the employees. I estimate that I spoke to over a dozen employees about the time card irregularities, including Floyd Holeman, Brian Fitzgerald, David Huitt, Brian Branson, Wilma Brown, Stephanie Hoffman, James Cavanaugh, Robert Berg, Daniel Courtright and Mary Peterson. The topic was discussed often, but no one was willing to discuss it with management.

*See* Hoffman Decl., ¶ 11 (Docket No 8, Att. 3). This paragraph mimics Mr. Branson's Paragraph 10 and, accordingly, Defendant raises the same objections. *See* Def.'s Memo. in Supp. of Mot. to Strike, p. 5 (Docket No. 14, Att. 2). For the same reasons offered above (*see supra* at p. 20), Defendant's Motion to Strike (Docket No. 14) is denied in this respect.

Even when considering the merits of Defendant's Motion to Strike (Docket No. 14), based upon the (1) status of the action, (2) the current state of the record, and (3) the remaining portions of the declarations offered in support of a collective action, this Court recommends that Plaintiffs' Motion for Conditional Certification (Docket No. 8) be granted.

Again, this recommendation should not be misinterpreted by the parties to indicate that final certification at the second stage of review is a foregone conclusion. It is expected that Defendants will challenge the status of any ineligible individuals who may opt-in or, likewise, challenge the certification generally at the second stage of the two-tiered review process. While the number of potential plaintiffs who will choose to opt-in is necessarily unknown at this point, this Court finds it prudent at this initial stage of the certification process to allow notice to be sent and then to reassess certifiability once the deadline to opt-in has passed.

**E.   Adequacy of Proposed Notice**

The FLSA requires the court to provide potential plaintiffs "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-LaRoche*, 493 U.S. at 170. In *Hoffmann-LaRoche*, the

Supreme Court stated that "in exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality." *Id*. at 174. Here, Defendant posits a number of objections to Plaintiffs' proposed notice that merit discussion so as to avoid even the appearance of judicial endorsement of the merits of the action. *Id*.

First, Defendant claims that Plaintiffs' proposed notice fails to limit the putative class to non-exempt employees. *See* Def.'s Opp. to Mot. for Cond. Cert., p. 19 (Docket No. 12). In response, Plaintiffs argue that such a restriction is not necessary given the reference to "hourly workers." *See* Pls.' Reply in Supp. of Mot. for Cond. Cert., p. 13 (Docket No. 21). Not only does the Court question whether the inclusion of the term "non-exempt" within the notice is needed, it also fails to see how such a term of art will aid a potential plaintiff in deciding whether he/she qualifies as a potential member of the collective action. In contrast, there does not appear to be any prejudice to Plaintiffs for incorporating the "non-exempt" term. Therefore, as discussed at the hearing, the Court will give the parties' counsel the opportunity to work jointly to arrive upon the appropriate resolution of this issue. In the event counsel is unsuccessful, either party may present a motion to the Court and, in turn, the Court will promptly render a decision.

Second, Defendant argues that the "Description of the Lawsuit" section of the notice is faulty in two respects: (1) the notice fails to notify individuals who are not required to report early that they are not similarly situated to the named Plaintiffs, and (2) the notice fails to reference Defendant's denial of the allegations and is actively defending against Plaintiffs' claims. *See* Def.'s Opp. to Mot. for Cond. Cert., p. 19 (Docket No. 12). It is unclear exactly what Defendant is attempting to accomplish through its first critique of the description or, for that matter, the benefit to either party (or the potential plaintiffs) with such included language.

**REPORT AND RECOMMENDATION AND ORDER - 23**

Either potential plaintiffs opt-in to the action by the deadline or they do not.  As to the second

critique, Plaintiffs agree to incorporate language indicating not only that Defendant denies

Plaintiffs' allegations, but that it is also defending against those same allegations.  *See* Pls.'

Reply in Supp. of Mot. for Cond. Cert., p. 14 (Docket No. 21).  Again, the Court will give the

parties' counsel the opportunity to work jointly to arrive upon the appropriate resolution of this

issue.  In the event counsel is unsuccessful, either party may present a motion to the Court and,

in turn, the Court will promptly render a decision.

Third, Defendant claims that the one sentence within the notice stating that the Court

does not have an opinion as to the merits of the lawsuit is insufficient to convey the Court's

neutrality.  *See* Def.'s Opp. to Mot. for Cond. Cert., p. 19 (Docket No. 12).  Moreover,

Defendant argues that the notice should not be sent on a court-captioned page.  *Id*.  The Court is

inclined to agree with Defendant's first objection in this respect, but not the second.  Defendant

offers no authority recommending the disposal of a court-caption for the purpose of providing

notice.  However, reference to the Court's neutrality should be bolded and enhanced to read

something similar to: "The Court has taken no position in the case regarding the merits of

Plaintiffs' claims or Defendant's defenses.  Therefore, this Notice is not an expression by the

Court of any opinion as to the merits, if any, of the lawsuit."  Further, this statement should stand

alone immediately below the court-caption.  *See Adams*, 242 F.R.D. at 540 ("[N]otices typically

contain a court caption and the bolded statement of neutrality below the caption should make the

court's position clear to potential plaintiffs.").  The Court will give the parties' counsel the

opportunity to work jointly to arrive upon the appropriate resolution of this issue.  In the event

counsel is unsuccessful, either party may present a motion to the Court and, in turn, the Court

will promptly render a decision.

**REPORT AND RECOMMENDATION AND ORDER - 24**

Fourth, Defendant points out that the "Consequences of Joining This Lawsuit" section of the notice should inform potential plaintiffs that they may share in liability for payment of costs if Defendant prevails in this action. *See* Def.'s Opp. to Mot. for Cond. Cert., p. 19 (Docket No. 12). Plaintiffs agree (s*ee* Pls.' Reply in Supp. of Mot. for Cond. Cert., p. 15 (Docket No. 21)) and so does this Court. *See Adams*, 242 F.R.D. at 540 ("This information [cost sharing] should be included to present to potential plaintiffs a 'fair statement of their rights.'") (citation omitted). The notice should be amended to read something similar to: "Those who opt-in may also be held liable for costs associated with this lawsuit, and for potential counterclaims which could be asserted against you by Defendant." *See Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 98 (S.D.N.Y. 2003).[6] The Court will then leave it to both parties to incorporate the requested language within any notice.

Fifth, Defendant takes issue with the proposed 120-day time period allowing opt-in consents to be filed, proposing a 30-day time period instead. *See* Def.'s Opp. to Mot. for Cond. Cert., p. 19 (Docket No. 12). Plaintiff offers no compelling reason to maintain the 120-day deadline, particularly when considering that Plaintiffs' proposed notice incorporates a 60-day deadline. *See* Not. of Collective Action [Proposed], attached as Ex. 1 to Pls.' Mem. in Supp. of Mot. for Cond. Cert., p. 20 (Docket No. 8, Att. 2). At the same time, 30 days is too short. The Court will implement a 60-day time period from the date of mailing the notice to allow for the filing of opt-in consents.

---

[6] Of separate concern to the Court is the following sentence: "In order to recover for damages you suffered as a consequence of Securitas' Federal wage and hour violations, you must prepare and submit the attached form to James Piotrowski, attorney for plaintiffs." *See* Not. of Collective Action [Proposed], attached as Ex. 1 to Pls.' Mem. in Supp. of Mot. for Cond. Cert., p. 20 (Docket No. 8, Att. 2). It would seem that a conclusory comment to the effect of "Securitas' Federal wage and hour violations" defeats the purpose of communicating a neutral and unbiased tone to prospective plaintiffs. The Court will require the parties to work together to arrive upon alternate, more neutral, language.

**REPORT AND RECOMMENDATION AND ORDER - 25**

Sixth, in addition to Plaintiffs' counsel's contact information, Defendant seeks to incorporate its counsel's contact information as well.  *See* Def.'s Opp. to Mot. for Cond. Cert., p. 19 (Docket No. 12).  Although Defendant references *Belcher v. Shoney's Inc.*, 927 F. Supp. 249, 254 (M.D. Tenn. 1996) as an example of both parties' counsels' contact information  on the same notice, the district court in *Adams* rejected such an argument, finding:

> Defendant cites to *Belcher* as an example of a notice that includes the contact information of a defendant's counsel.  However, defendant cites no case law that requires that such contact information be included.  In addition, there is no reasoning in *Belcher* explaining why such contact information was included in the notice authorized by that court.  The court declines to require that the notice include the contact information of defendant's counsel.

*Adams*, 242 F.R.D. at 542; *but see Reab*, 214 F.R.D. at 632.  While authority within this Circuit exists to deny Defendant's request, unlike *Belcher*, at the hearing, Defendant's counsel maintained that notice can concurrently operate to assist Defendant if individuals wish to share information helpful to the defense of Plaintiffs' claims.  Keeping in mind the lenient standard employed here for conditionally certifying a class, providing contact information for both parties' counsel is arguably not inconsistent with such a notion.  Still, the Court will give the parties' counsel the opportunity to work jointly to arrive upon the appropriate resolution of this issue.  In the event counsel is unsuccessful, either party may present a motion to the Court and, in turn, the Court will promptly render a decision.

Finally, and more fundamentally, Defendant objects to Plaintiffs' proposed class as "far too broad."  *See* Def.'s Opp. to Mot. for Cond. Cert., p. 20 (Docket No. 12).  In support of this argument, Defendant reiterates its position that, if a class is to be certified, that class should represent only "nonexempt employees who were assigned to the same Securitas sites where the

**REPORT AND RECOMMENDATION AND ORDER - 26**

named and opt in Plaintiffs were assigned." As discussed before, however, *Adams* and *Centurioni*, both cases within this Circuit, suggest a different scope for the purpose of conditional certification. *See supra* at pp. 14-16. If, in fact, discovery reveals that different employees at different locations, with different supervisors exhibited something altogether different than what is alleged by Plaintiffs in their Complaint and offered through the declarations, such a finding may help support Defendant's anticipated efforts toward decertifying the class. Until then, however, the Court considers the admittedly general scope of the notice not to be so excessively broad as to impede Plaintiff's participation during this initial period.

## IV. RECOMMENDATION

Based upon the FOREGOING, it is hereby RECOMMENDED that the District Court enter an Order consistent with the following:

1.      That Plaintiffs' Motion for Conditional Certification and to Approve Notice (Docket No. 8) be GRANTED;

2.      That the parties be given the opportunity to work together on drafting a mutually-agreeable notice within 15 days of the District Court's adoption of this Report and Recommendation; and

3.      That Defendant provide Plaintiffs in electronic format a list of all present and former hourly employees in the State of Idaho employed within the last three years.

## V. ORDER

Based upon the FOREGOING, it is hereby ORDERED that Defendant's Motion to Strike Portions of Declarations of Brian Branson and Jennifer Hoffman (Docket No. 14) be GRANTED in part and DENIED in part as follows:

**REPORT AND RECOMMENDATION AND ORDER - 27**

1.      That Defendant's Motion to Strike Portions of Declarations of Brian Branson and Jennifer Hoffman (Docket No. 14) is GRANTED with respect to Paragraph 8 of Brian Branson's Declaration;

2.      That Defendant's Motion to Strike Portions of Declarations of Brian Branson and Jennifer Hoffman (Docket No. 14) is GRANTED with respect to Paragraph 9 of Brian Branson's Declaration;

3.      That Defendant's Motion to Strike Portions of Declarations of Brian Branson and Jennifer Hoffman (Docket No. 14) is DENIED with respect to Paragraph 10 of Brian Branson's Declaration;

4.      That Defendant's Motion to Strike Portions of Declarations of Brian Branson and Jennifer Hoffman (Docket No. 14) is DENIED with respect to Paragraph 9 of Jennifer Hoffman's Declaration; and

5.      Defendant's Motion to Strike Portions of Declarations of Brian Branson and Jennifer Hoffman (Docket No. 14) be DENIED with respect to Paragraph 11 of Jennifer Hoffman's Declaration.

DATED:  **August 7, 2008**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**REPORT AND RECOMMENDATION AND ORDER - 28**